**[FILED UNDER SEAL]**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| VIRGINIA INNOVATION SCIENCES, INC., | |
| Plaintiff, | |
| v. | Civil Action No.4:18-cv-00475-ALM |
| HONEYWELL INTERNATIONAL, INC.., | JURY TRIAL DEMANDED |
| Defendant. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO HONEYWELL INTERNATIONAL INC.'S MOTION TO DISMISS OR TRANSFER VENUE**

**[FILED UNDER SEAL]**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    I.    28 U.S.C. § 1400(b) Grants Plaintiff the Right to Sue Defendant in This District. 2

        A.    Publicly-available information indicates that ▮▮▮▮▮▮ ▮▮▮▮▮ is not a distinct corporate organization from Honeywell. ............ 4

        B.    The Court must consider "'all relevant factors or attributes' of the 'nature of the relationship' between" Defendant and its Facilities. .................................. 4

        C.    The Plano Facility is a place "of the Defendant" for patent venue.................. 6

        D.    Defendant's other facilities in this District are likewise regular and established places of business within the meaning of 28 U.S.C. § 1400(b). ..................... 11

        E.    Venue requires only that Defendant commit infringement in a district and have a place of business there, not that it infringe at that place of business... 12

    II.    The Eastern District of Texas is the Right Forum for this Dispute Under 28 U.S.C. § 1404(a). ............................................................................................................. 14

    III.    The Public Factors Weigh Strongly Against Transfer .......................................... 15

        A.    The Eastern District of Texas Has a Greater Interest in this Case................. 15

        B.    The Eastern District of Texas Is Better Able to Administer This Case .......... 17

    IV.    Private Interest Factors Weigh Strongly Against Transfer from this Court to the Eastern District of Virginia ................................................................................... 18

        A.    Proof Will Be Easier To Access in the Eastern District of Texas .................. 18

        B.    Compulsory Process Is Available for Relevant Witnesses in the Eastern District of Texas ............................................................................................... 19

        C.    The Cost of Attendance for Willing Witnesses is Lower in the EDTX.......... 20

CONCLUSION...................................................................................................................... 28

**[FILED UNDER SEAL]**

## TABLE OF AUTHORITIES

**Cases**

*AGIS Software Dev. LLC v. HTC Corp.*,
     No. 2:17-CV-00514-JRG, 2018 U.S. Dist. LEXIS 167024 (E.D. Tex. Sep. 28, 2018).... 14

*Alacritech Inc. v. CenturyLink, Inc.*,
     No. 2:16-CV-00693-JRG, 2017 U.S. Dist. LEXIS 152438 (E.D. Tex. Sep. 19, 2017).... 20

*Bates v. U.S.*,
     522 U.S. 23, 118 S. Ct. 285, 139 L. Ed. 2d 215 (1997)................................................... 13

*Blitzsafe Tex. v. Bayerische Motoren Werke Ag*,
     No. 2:17-CV-00418-JRG, 2018 U.S. Dist. LEXIS 173065 (E.D. Tex. Sep. 5, 2018)........ 5

*Bristol-Myers Squibb Co. v. Mylan Pharm., Inc.*,
     No. 17-379-LPS, 2017 U.S. Dist. LEXIS 146372 (D. Del. Sep. 11, 2017)............... 12, 13

*Cascades W. Assocs. L. P. v. PRC, Inc.*,
     36 Va. Cir. 324 (Cir. Ct. 1995) ........................................................................................ 9

*Collabo Innovations, Inc. v. OmniVision Techs., Inc.*,
     No. 16-197-SLR-SRF, 2017 U.S. Dist. LEXIS 10199 (D. Del. Jan. 25, 2017) .............. 28

*ColorQuick, L.L.C. v. Vistaprint Ltd.*,
     No. 6:09-cv-323, 2010 U.S. Dist. LEXIS 136226 (E.D. Tex. July 22, 2010) .................. 28

*ConnecTel, LLC v. Cicsco Sys., Inc.*,
     2005 WL 366966 (E.D. Tex. Feb. 16, 2005) ................................................................... 27

*Cooktek Induction Sys., LLC v. I/O Controls Corp.*,
     No. 4:15-cv-548-ALM, 2016 U.S. Dist. LEXIS 100825 (E.D. Tex. Aug. 2, 2016)... 15, 19

*Core Wireless Licensing S.a.r.l. v. LG Elecs. Inc.*,
     No. 2:14-CV-911-JRG, 2015 U.S. Dist. LEXIS 115801 (E.D. Tex. Aug. 31, 2015)....... 16

*E-System Design, Inc. v. Mentor Graphics Corp.*,
     No. 4:17-CV-00682, 2018 U.S. Dist. LEXIS 92797 (E.D. Tex. June 1, 2018)............... 16

*Ethypharm SA France v. Abbott Labs.*,
     271 F.R.D. 82 (D. Del. 2010) .......................................................................................... 7

*Goodman Co., L.P. v. A & H Supply, Inc.*,
     396 F. Supp. 2d 766 (S.D. Tex. 2005) ............................................................................ 19

*In re Aliphcom*,
     449 F. App'x 33 (Fed. Cir. 2011) ................................................................................... 28

**[FILED UNDER SEAL]**

*In re Apple, Inc.*,
   581 F. App'x 886 (Fed. Cir. 2014) ................................................................ 22

*In re Cordis Corp.*,
   769 F.2d 733 (Fed. Cir. 1985) ...................................................................... 12

*In re Cray Inc.*,
   871 F.3d 1355 (Fed. Cir. 2017) ............................................................. passim

*In re Echostar Corp.*,
   388 Fed. Appx. 994 (Fed. Cir. 2010) ........................................................... 27

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) .................................................................... 21

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) .................................................................... 16

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ........................................................................ 22

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) .................................................................. 14, 17

*In re ZTE (USA) Inc.*,
   890 F.3d 1008 (Fed. Cir. 2018) ............................................................ 5, 7, 13

*J2 Global Communication, Inc. v. Protus IP Solutions, Inc.*,
   2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) .............................................. 27

*LG Elecs., Inc. v. Hitachi, Ltd.*,
   No. 9:07-CV-138, 2007 U.S. Dist. LEXIS 94772 (E.D. Tex. Dec. 3, 2007) .................... 14

*MGM Well Services, Inc. v. Production Control Services, Inc.*,
   2010 WL 11553307 (E.D. Tex. Nov. 22, 2010) ............................................ 27

*Plexxikon Inc. v. Novartis Pharm. Corp.*,
   No. 17-cv-04405-HSG, 2017 U.S. Dist. LEXIS 201984 (N.D. Cal. Dec. 7, 2017) ......... 13

*Raytheon Co. v. Cray, Inc.*,
   258 F. Supp. 3d 781 (E.D. Tex. 2017) .......................................................... 12

*SEVEN Networks, LLC v. GOOGLE LLC*,
   2:17-CV-00442-JRG (E.D.Tex. August 14, 2018 (J. Gilstrap)) (Doc. 280) ................... 19

*Seven Networks, LLC v. Google LLC*,
   315 F. Supp. 3d 933 (E.D. Tex. 2018) .......................................................... 12

**[FILED UNDER SEAL]**

*Snyders Heart Valve LLC v. St. Jude Med. S.C., Inc.*,
    No. 4:16-CV-00812, 2018 U.S. Dist. LEXIS 105462 (E.D. Tex. June 25, 2018).............. 3

*Soverain IP, LLC v. Apple, Inc.*,
    2017 U.S. Dist. LEXIS 140039 (E.D. Tex. July 25, 2017).............................................. 11

*Soverain IP, LLC v. AT&T Servs.*,
    No. 2:17-CV-00293-RWS, 2017 U.S. Dist. LEXIS 207551 (E.D. Tex. Dec. 18, 2017).... 4

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*,
    104 F. Supp. 3d 1150 (D. Or. 2015) ................................................................................ 7

*Strabala v. Zhang*,
    318 F.R.D. 81 (N.D. Ill. 2016)........................................................................................ 15

*Title Ins. & Tr. Co. v. Cty. of Riverside*,
    48 Cal. 3d 84, 255 Cal. Rptr. 670, 767 P.2d 1148 (1989) ............................................... 7

*Uniloc United States v. Samsung Elecs. Am.*,
    No. 2:17-CV-00651-JRG, 2018 U.S. Dist. LEXIS 176337 (E.D. Tex. Sep. 18, 2018).... 22

*United States v. One 1988 Prevost Liberty Motor Home*,
    952 F. Supp. 1180 (S.D. Tex. 1996) ................................................................................ 7

*Weber v. PACT XPP Techs., AG*,
    811 F.3d 758 (5th Cir. 2016) .......................................................................................... 15

*Wiginton v. Pierce*,
    No. 3:15-CV-828-B (BF), 2015 U.S. Dist. LEXIS 88834 (N.D. Tex. June 15, 2015)..... 11

*Zoltar Satellite Sys. v. LG Electronics Mobile*,
    402 F.Supp.2d 731 (E.D. Tex. 2005) .............................................................................. 26

**Statutes**

28 U.S.C. § 1391 ..................................................................................................................... 14

28 U.S.C. § 1400(b) ......................................................................................................... passim

28 U.S.C. § 1404(a) ................................................................................................................ 14

Va. Code Ann. § 58.1-320 ...................................................................................................... 15

**Rules**

Fed. R. Civ. P. 45(a)(2).......................................................................................................... 20

Fed. R. Civ. P. 45(c)(1)(A) .................................................................................................... 20

[FILED UNDER SEAL]

## INTRODUCTION

Defendant Honeywell International, Inc. (Honeywell), which has multiple regular and established places of business within the Eastern District of Texas, cannot establish substantial overlap with the Plaintiff's prior litigation in either Division of the Eastern District of Virginia ("the EDVA") because no actual overlap exists.

Honeywell was not a party to Plaintiff's earlier litigations involving Samsung (in the Norfolk Division) or Amazon (Alexandria Division).  No home security products, including those offered by Honeywell, were accused of infringement in either prior Virginia action.  In addition, the patent asserted against Honeywell in this action, United States Patent No. 9,912,983 ("the '983 patent"), was _not_ asserted in either Virginia action.  Although it asserts the contrary, Honeywell fails to explain how any claim construction issue in this case would benefit from the claim construction efforts of either EDVA judge.  To the extent it might be informative, both Judge Davis (*Samsung*) and Judge O'Grady (*Amazon I*) refused to construe the allegedly overlapping claim terms identified by Honeywell in its motion.  In both cases, the courts determined that no construction was necessary and assigned the terms Honeywell identified their plain and ordinary meaning.  In short, Honeywell identifies no overlapping claim constructions that would even favor transfer of this action.

Honeywell's motion to transfer should be denied for the further reasons that plaintiff's chosen forum is entitled to deference and Honeywell cannot clearly establish that the EDVA is a more convenient forum.  As described in more detail below and in the motion to substitute plaintiff, original plaintiff/patent owner, Virginia Innovations Sciences, Inc. ("VIS"), was a Virginia resident while it existed.  That company, however, merged into a successor, proposed substitute plaintiff, Innovative Sciences, LLC ("Innovation").  Innovation is a Texas corporation

1

**[FILED UNDER SEAL]**

with a principal place of business in Plano, Texas.  Thus, Honeywell's heavy reliance on the Virginia residence of Innovation's predecessor is misplaced.

The remaining transfer factors are either neutral or weigh against transfer.  Honeywell seeks transfer without identifying any specific witnesses, party or third-party, who will not voluntarily appear at trial and who are not subject to compulsory process within this forum. While the EDVA is closer to Honeywell's ███████ headquarters than Texas, transferring this action to the EDVA would only shift the burden from Honeywell to Innovation.  Section 1404, however, was not created to support forum shopping – it was created to discourage it.

Honeywell also asks this Court to dismiss the action against it on grounds of improper venue.  By its own admission, however, Honeywell has ████████████████████, each of which renders venue proper under 28 U.S.C. § 1400(b).  Defendant claims the Honeywell facility referenced in VIS's Complaint (the "Plano Facility") belongs to ████████████ ████████████████████████.  But formal corporate distinctions do not defeat patent venue under applicable law, and the factors the Federal Circuit instructs courts to consider—including *inter alia* Honeywell's marketing and its relationship to employees at the Plano Facility—indicate the Plano Facility meets statutory venue requirements. Critically, Honeywell admits to having ████████████████ but argues that they are not qualified ██████ because they are not involved in the sale of the accused products.  Even if true, that fact is irrelevant under controlling precedent.

## ARGUMENT

### I.    28 U.S.C. § 1400(b) Grants Plaintiff the Right to Sue Defendant in This District.

"Any civil action for patent infringement may be brought in the judicial district […] where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).  For venue to be proper, "(1) there must be a physical place in

2

**[FILED UNDER SEAL]**

the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

The only issue in dispute is whether the Plano Facility, or some other facility in the Eastern District of Texas, is a facility of the Defendant.  Defendant does not dispute that VIS has adequately pled infringing acts in the Eastern District of Texas, including *inter alia* selling and offering to sell its Accused Instrumentalities within the district. Indeed, "[t]he Federal Circuit, the Fifth Circuit, and the Eastern District of Texas, have all held that plaintiffs can satisfy this burden [to establish venue] with an allegation of infringement and that plaintiffs need not prevail on the merits of its infringement claim to satisfy its venue burden." *Snyders Heart Valve LLC v. St. Jude Med. S.C., Inc.*, Civil Action No. 4:16-CV-00812, 2018 U.S. Dist. LEXIS 105462, at *16-17 (E.D. Tex. June 25, 2018). Defendant's Plano Facility is unquestionably a "physical place in the district" and a "regular and established place of business" within the meaning of 28 U.S.C. § 1400(b), as it has been in operation since "years prior to" Honeywell's 2013 acquisition of ███.  Moschorak Decl. ¶ 6; Jackson Ex. XA (2013 Honeywell 10-K at 70).

Honeywell argues that the Plano Facility identified in VIS's Complaint is not a "place of the defendant" because it is leased by ███, which is purportedly a wholly-owned subsidiary of Defendant. This argument is insufficient to defeat venue propriety for three reasons. First, publicly-available information indicates that ███ is not in fact a distinct corporate entity. Second, the Plano Facility is a "place of" Honeywell for purposes of venue. Third, Defendant has at least ██████████ places of business in this district. Defendant's suggestion that these facilities must be the locations of infringing activity is without support in statutory text or case law.

**[FILED UNDER SEAL]**

**A.**    **Publicly-available information indicates that ███████████ ████████ is not a distinct corporate organization from Honeywell.**

Honeywell acquired the publicly-traded ████████████████████ ████████████████ on September 27, 2013. Ex. XA, 2013 Honeywell 10-K at 70.  In its filings with the SEC for that year, Defendant listed the ████████████████ as a wholly-owned subsidiary incorporated in Washington.  *Id.* at § 13, EX-21, p. 229/240.  In its most recent 10-K filing, Defendant lists no such subsidiary. Ex. XB, 2017 Honeywell 10-K § 5, EX-21, p. 120/132. Defendant's latter filing does not appear to contain the provision entitling it to omit any wholly-owned subsidiaries from its disclosures. *See* Ex. XB, 2017 Honeywell 10-K (cover page); Ex. XC, SEC 10-K General Instructions at 2-3. It is therefore reasonable to infer that ████████████████ is no longer a wholly-owned subsidiary of Defendant.

Even if ████ still exists, Honeywell disregards it publicly, as discussed *infra*. Defendant points to no mention of ████ in any document or any evidence that it holds out ████ as a separate company, except with respect to its purely internal recordkeeping. Even the LinkedIn page for ████████████████████ lists the company as "████ by Honeywell," directs those interested to visit Honeywell's LinkedIn page, and lists a Honeywell-branded page as its company website.  *See* Jackson Ex. XD (████ by Honeywell LinkedIn).

**B.**    **The Court must consider "'all relevant factors or attributes' of the 'nature of the relationship' between" Defendant and its Facilities.**

Defendant relies on verbiage from this Court's 2017 decision to argue that formal corporate distinctions between parties are sufficient to defeat venue.  *See* Mot. at 11-13, citing *Soverain IP, LLC v. AT&T Servs.*, No. 2:17-CV-00293-RWS, 2017 U.S. Dist. LEXIS 207551 (E.D. Tex. Dec. 18, 2017).  But to "be complete, the district court must give reasoned consideration to all relevant factors or attributes of the relationship in determining whether those

4

[FILED UNDER SEAL]

attributes warrant [a corporate partner's facility] being deemed a regular and established place of business of [a defendant]." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1015 (Fed. Cir. 2018). This Court's *Soverain IP* decision pre-dated the Federal Circuit's guidance on this point, and it does not appear that this Court has addressed how a wholly-owned subsidiary is to be treated in light of the specific factors outlined there.

Defendant's Motion at 12, n.10, acknowledges that the Federal Circuit has promulgated very different factors than observation of corporate formalities for determining whether a "place of business" is one "of the defendant" for purposes of venue. These include (1) whether the defendant owns, leases, or otherwise possesses or controls the place or the equipment located there; (2) whether the defendant claims the place as its own, such as by listing the location on a website, placing it in a directory, or putting a sign on or associated with the building; (3) the nature of the defendant's relationship with the employees at the place; (4) whether the party at that location would require the defendant's permission to change its location or cease working for the defendant; or (5) "any other factors relevant to the question" of whether the location is one of the defendant. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1014-16 (Fed. Cir. 2018).

Since the Federal Circuit ruling in *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1015 (Fed. Cir. 2018), this Court has followed the Federal Circuit's direction to conduct an analysis of all the relevant factors. In *Blitzsafe Tex. v. Bayerische Motoren Werke Ag*, No. 2:17-CV-00418-JRG, 2018 U.S. Dist. LEXIS 173065, at *20-24 (E.D. Tex. Sep. 5, 2018), this Court held that independent dealerships that an automobile distributor was *statutorily prohibited from owning or controlling* constituted a "place of business" of the distributor for purposes of patent venue, citing *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1015 (Fed. Cir. 2018). The Court found that the BMW distributor's action in requiring that sales be made from authorized locations, the

[FILED UNDER SEAL]

dealerships adopting the BMW name of the distributor, their incorporation of the BMW logo indicating their affiliation with BMW to the public, and the inclusion of dealership information on a website and direction to purchase products there made the dealerships "places of business" of the distributor.[1]

If Defendant's position were correct, it would lead to an absurd conclusion. A party could *escape* venue based on the facility owned by a close business partner if it *purchased* each of its partners,[2] installed its own choice of managers, and otherwise fully owned or controlled the dealerships—as long as it observed corporate formalities. It cannot possibly be the law that exercising veto power over the location of and selling products through one's business partner subjects a party to venue, but exercising near-total control of one's subsidiary does not.  Even if ████ and Defendant observe corporate formalities, the Court should focus on the connection between Defendant and the Plano Facility as outlined in *In re ZTE* rather than whether Defendant acts by and through an intermediary corporate entity.  Defendant has failed to meet its burden to show that the Plano Facility should not be deemed to be a Honeywell place of business under 28 U.S.C. § 1400(b).

### C.     The Plano Facility is a place "of the Defendant" for patent venue.

Considering all relevant factors, it becomes clear that the Plano Facility is a place of the defendant under 28 U.S.C. § 1400(b).

The first factor to consider is "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place." *In re ZTE (USA) Inc.*, 890 F.3d

---

[1] The Court also found that the direct sale of BMW distributor products (*e.g.,* car warranties and service) through the facilities constituted an independent basis for venue. *Id*. at 24-27.

[2] In the specific case of automobile dealerships, this would be illegal in Texas. But since the venue statue is nationally applicable and follows Federal Circuit law, the example applies in other states, and would apply to distributors of most products other than automobiles in Texas.

**[FILED UNDER SEAL]**

1008, 1015 (Fed. Cir. 2018) (quoting *In re Cray Inc.*, 871 F.3d 1355, 1363-64 (Fed. Cir. 2017)).

Defendant argues that ███████ rather than Defendant is the lessor of the Plano Facility since prior to the merger. Mot. at 12.  But Defendant is silent as to the remaining elements of this factor, and the name on the lease does not determine "possession or control." Defendant controls the ███████ property because it is legally deemed to be in control of ███████ property, and is in fact in control of it. Regarding the former, property in the control of a wholly-owned subsidiary is also deemed to be within the control of the owner.[3]

Even if this legal control is insufficient, Defendant exercises practical control of the Plano Facility.  First, ███████ is subordinate to Defendant's management. The President and CEO of the Safety and Productivity Solutions Segment, to which ███████ supposedly belongs, is John Waldron, an executive officer of Honeywell, Inc. Ex. XB, 2017 Honeywell 10-K at 5. Prior to that role, Mr. Waldron was President of Honeywell Scanning & Mobility, the unit of Defendant into which ███████ was *initially* integrated.[4]  Second, Defendant's structural relationship with ███████ can be and has been altered at Defendant's convenience. Defendant's ██████████████████████████████████ produces the Accused Instrumentalities. Moschorak Decl. ¶ 9.  Prior to July 2016, the ████████████████████████████ operating

---

[3] This is particularly true for other issues of court procedure, like discovery. *See, e.g., St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150, 1159 (D. Or. 2015) ("there are numerous cases that hold that a parent corporation has 'control' over documents owned by a wholly-owned subsidiary—even without any explicit analysis of specific contractual terms."); *Ethypharm SA France v. Abbott Labs.*, 271 F.R.D. 82, 93-94 (D. Del. 2010). For other contexts, *see, e.g., Title Ins. & Tr. Co. v. Cty. of Riverside*, 48 Cal. 3d 84, 90, 255 Cal. Rptr. 670, 673, 767 P.2d 1148, 1151 (1989) ("the acquisition of a corporation through a stock transfer results in a change of ownership of real property owned not only by the parent company but by a subsidiary of the parent"); *United States v. One 1988 Prevost Liberty Motor Home*, 952 F. Supp. 1180, 1210 (S.D. Tex. 1996) (upholding forfeiture of asset owned by subsidiary of business controlled by money-laundering individual).

[4] Mr. Waldron succeeded the current President and CEO of Honeywell, Inc. in that role. *See* Ex. XB, 2017 Honeywell 10-K at 5.

**[FILED UNDER SEAL]**

segment, which Defendant acknowledges produces the Accused Instrumentalities, and the

"Safety and Productivity Solutions" segment, of which ███████ is allegedly a part, were part of

the same "Automation and Control Solutions" reporting segment. Ex. XA, 2017 Honeywell 10-K

at 17, 84. Even if Defendant maintains the corporate formalities, the organization and

management of ███████ activities is determined by Defendant, who thus has effective control

of ███████ property.[5]

With respect to the second factor, Defendant also claims the Plano Facility as its own.

"[A] defendant's representations that it has a place of business in the district are relevant to the

inquiry. Potentially relevant inquiries include whether the defendant lists the alleged place of

business on a website, or in a telephone or other directory; or places its name on a sign

associated with or on the building itself." *In re Cray Inc.*, 871 F.3d 1355, 1363-64 (Fed. Cir.

2017). At least two signs at the Plano Facility mark the building as associated with Honeywell,

including a prominent sign on the front door of its suite.  *See* Ex. XE (Google Maps).  Multiple

directory entries associate the Plano Facility address with Honeywell, including those shown on

Google Maps. *See* Jackson Ex. XE (Google Maps).

With respect to the third factor, Defendant's relationship with its employees also suggests

that the Plano Facility is a place of Defendant. Defendant advertises job openings at the Plano

Facility as Honeywell jobs, and lists the address of the Plano Facility on its job postings in Plano.

---

[5] This is further reinforced by the declaration submitted by Robert Moschorak. Moschorak holds
two positions at Honeywell within the ███████ business unit, and notes no position he holds with
███████ or any other unit of which ███████ is a part.  Moschorak Decl. ¶ 1. He based his
declaration on "corporate records maintained by Honeywell International in the ordinary course
of business." Moschorak Decl. ¶ 1. So Defendant's employee in one business unit relying on
Defendant's records is sufficiently knowledgeable about ███████ to make a sworn declaration
regarding ███████ lease status, even though ███████ is in a different business unit. *See Id*.
¶¶ 6-7.

[FILED UNDER SEAL]

*See, e.g.*, Ex. XF (Honeywell Jobs); Ex. XG (Sales Manager); Ex. XH (Sr. Service Offering); Ex. XI (Outside Sales).  Honeywell has previously sought a "Site Leader" for its Plano Facility, listing that same address.  *See* Ex. XJ (Plano Site Leader).  More, the LinkedIn page for ███████ indicates a total of three new hires in the past two years.  *See* Ex. XD (███████ LinkedIn).[6] Taken together, it appears clear that many if not all of the employees at the Plano Facility are Defendant's employees, hired specifically for work at the Plano Facility.  This factor supports the view that the Plano Facility is a place of the Defendant for purposes of venue.

Regarding the fourth factor, the evidence of the previous three factors suggests that ███████ would indeed require Defendant's permission to change locations or cease working for Defendant. First, as a practical matter, Defendant (as the sole owner of ███████ and the one who determines ███████ management) has the ability to control all of ███████ decisions, and anything done by ███████ is done with Defendant's at least tacit permission.  Additionally, merger due diligence typically requires review of outstanding lease agreements, which are necessarily ratified by the acquirer as part of the acquisition.[7]  Assuming that Defendant followed this common procedure, it ***ratified*** the use of the Plano Facility.  Discovery into the due

---

[6] While that same site lists that there are 1385 current employees, down 2% over the past ***two years***, it is unlikely that there are presently that many ███████ employees. Rather, as the average tenure of listed employees is 15.6 years, it indicates that many or all of them simply have not updated their LinkedIn profile in a long time. The alternative explanation would be statistically incredible, as the lowest ***monthly*** total separations rate for any private industry in summer 2018 is 2.2%. See Ex. XM, Job Rates at Table 9. There is also an ███████ listed on LinkedIn, noting 18 employees, none of whom are in Texas. *See* ███████

[7] *Cf.*, *Cascades W. Assocs. L. P. v. PRC, Inc.*, 36 Va. Cir. 324, 340 (Cir. Ct. 1995) (holding that a lease had been ratified by the acquirer of a company and finding "it difficult, at best, to believe that nobody from Emhart read the Cascades West lease during the due diligence process leading up to the January 1, 1988, merger.").

**[FILED UNDER SEAL]**

diligence surrounding Defendant's acquisition of ████████ may be warranted to the extent this is disputed.

Finally, at least two other facts suggest that Defendant is in control of the Plano Facility. First, Defendant claims the ████████████████████████████████████████████ ████████████████ for which the employees at the Plano Facility "provide products and services" (Moschorak Decl. ¶ 7) as its own.  Defendant describes ████████ products as its own and lists those products on its website—including at least the ████████-branded PM series (industrial & RFID), PC (desktop & RFID), PR (mobile), and PX (RFID) printer series.  *See* Ex. XK (Printers Honeywell). Honeywell's website provides the support for ████████ printers, uses its own driver system to install ████████ printer software, and directly provides the drivers associated with ████████ products.  *See* Ex. XL (Troubleshooting).  Since Defendant claims it is the one offering the products and services performed at the Plano Facility, it is only reasonable to infer that the place providing the products and services is a place of Defendant. Second, Defendant characterizes the facilities of its ***other*** divisions, including ████████████████, as "Honeywell International" sites in its motion and declaration.  When arguing that venue is appropriate in EDVA, Mr. Moschorak claims that ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ Moschorak Decl. ¶ 12.  There is no basis for characterizing these sites as belonging to Defendant, but not characterizing the ████████ site—which is ████████████████████████████████████████████ (Moschorak Decl. ¶ 7) - as ***not*** belonging to Defendant.

10

[FILED UNDER SEAL]

### D.     Defendant's other facilities in this District are likewise regular and established places of business within the meaning of 28 U.S.C. § 1400(b).

In addition to the Plano Facility, ████████████████████████████████

████████████████████████████████████████████████ Moschorak Decl. ¶ 8.

Defendant admits these are places of Defendant, and the facilities in question are all physical, non-transitory locations.  While Defendant claims that VIS did not rely on these locations when pleading venue, the Complaint did not limit itself to relying on the Plano facility. *See* D.I. 1 at ¶ 6 (pleading that Defendant "has a regular and established place of business within this District, including, ***without limitation***, at [the Plano Facility]." (emphasis added)). Defendants point to no authority requiring more specific pleading.  Indeed, "the plaintiff is under no obligation to plead specific facts supporting venue in the complaint." *Soverain IP, LLC v. Apple, Inc.*, 2017 U.S. Dist. LEXIS 140039, at *8 (E.D. Tex. July 25, 2017).  Considering Defendant's actions suggesting that venue is proper based on the Plano Facility, it would be inappropriate to require specific pleading for an alternate facility – especially where there is no factual dispute that ████████████████ exist in the District and Plaintiff's fundamental claim is undoubtedly true. And even if the pleading of specific facts to support venue were required, the Court should grant VIS leave to amend its complaint to plead those facts rather than dismissing or transferring the case.  *See Wiginton v. Pierce*, No. 3:15-CV-828-B (BF), 2015 U.S. Dist. LEXIS 88834, at *3-4 (N.D. Tex. June 15, 2015).

In any event, Honeywell's admission that ████████████ in the Eastern District of Texas are places of the Defendant, and publicly-available facts show that they are attributable to the Defendant in the same ways as the Plano Facility.  With respect to the facility in ████████ ████, that Facility is attributed to Defendant in the yellowpages.com directory and the Google entry for the address.  *See* Ex. XN (yellowpages.com), Ex. XO (Google entry).  Honeywell

11

**[FILED UNDER SEAL]**

prominently displays its sign at the ███ facility.  *See Id.* Defendant hires employees for its ███ location and lists the address of its ███ facility on job postings.  *See, e.g.,* Ex. XP (Lead I&E Technician), Ex. XQ (Maintenance Mechanic).  Likewise, the ███ facility is attributed to Honeywell the yellowpages.com directory and the Google entry for the address, and is marked by a sign prominently proclaiming it to be a place of Defendant.  *See* Ex. XR (Google Maps); Ex. XS (yellowpages.com).

> ### E.   Venue requires only that Defendant commit infringement in a district and have a place of business there, <u>not</u> that it infringe at that place of business.

Defendant argues that the law of patent venue is in a state of flux and that this court should read 28 U.S.C. § 1400(b) to require a connection between the regular and established place of business and the accusations of infringement to achieve the policy of preventing abuse. *See* Mot. at 14-16.  That proposition is wrong.  The only Federal Circuit authority that Honeywell identifies as support is the 33-year-old decision in *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985).  But while the *Cordis* Court was indisputably alluding to a relationship between Cordis' infringing acts and its place of business, that court was considering whether the acts of an employee within a jurisdiction could establish venue even in the absence of a physical office in that jurisdiction.  The Federal Circuit's analysis did not purport to impose the requirement that infringing acts must occur at the facility to satisfy such a relationship must exist." *Bristol-Myers Squibb Co. v. Mylan Pharm., Inc.*, No. 17-379-LPS, 2017 U.S. Dist. LEXIS 146372, at \*53-54 (D. Del. Sep. 11, 2017). Defendant acknowledges contrary authority in this Court. *See* Mot. at 15 (citing *Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 945 (E.D. Tex. 2018) (Gilstrap, J.); *Raytheon Co. v. Cray, Inc.*, 258 F. Supp. 3d 781, 791-92 (E.D. Tex. 2017), *vacated on other grounds*, *In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017)). More, this Court's precedent is in line with the majority view. *Bristol-Myers Squibb Co. v. Mylan*

**[FILED UNDER SEAL]**

*Pharm., Inc.*, No. 17-379-LPS, 2017 U.S. Dist. LEXIS 146372, at *52 (D. Del. Sep. 11, 2017)

(collecting cases and holding that "a majority of cases has determined that no relationship is

required."). The Court should reject Defendant's argument and follow its precedent, in keeping

with the majority rule, for at least three reasons.

The plain language of the patent venue statute "does not include a nexus requirement.

Courts should 'ordinarily resist reading words or elements into a statute that do not appear on its

face, *Bates v. U.S.*, 522 U.S. 23, 29, 118 S. Ct. 285, 139 L. Ed. 2d 215 (1997), and this is one of

the many cases where that is true." *Plexxikon Inc. v. Novartis Pharm. Corp.*, No. 17-cv-04405-

HSG, 2017 U.S. Dist. LEXIS 201984, at *5-6 (N.D. Cal. Dec. 7, 2017) (denying motion to

dismiss).  Venue propriety requires pleading that a Defendant "committed acts of infringement

**and has** a regular and established place of business" in the district.  28 U.S.C. § 1400(b).  This

does not require that the Defendant have committed acts of infringement **at** or **arising from** a

regular and established place of business in the district, or that the place of business otherwise be

connected to infringing activity.  *Bristol-Myers Squibb Co. v. Mylan Pharm., Inc.*, No. 17-379-

LPS, 2017 U.S. Dist. LEXIS 146372, at *52 (D. Del. Sep. 11, 2017). Moreover, the venue

statute's construction is not amenable to the policy-oriented approach of Defendant.  Rather, "the

text of § 1400(b) is self-evident that '[t]he requirement of venue is specific and unambiguous; it

is not one of those vague principles which, in the interests of some overriding policy, is to be

given a liberal construction.'" *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1014 (Fed. Cir. 2018)

(quoting *Cray*, 871 F.3d at 1361).

Honeywell's proposed rule would not solve any perceived abuses, but would encourage

abuse by defendants and make venue analysis more difficult.  The abuse sought to be cured by

the patent venue statute arose from a rule permitting venue any place a corporation could be

[FILED UNDER SEAL]

served (*i.e.,* where jurisdiction would lie and an officer or agent could be found). *In re Cray Inc.*, 871 F.3d 1355, 1361 (Fed. Cir. 2017). The requirement that a place of business be located in the district accomplishes that goal by requiring a genuine and relatively stable connection between a defendant and the district, which is not only more restrictive than the old venue rule, but more restrictive than is required for other cases under 28 U.S.C. § 1391. Honeywell's admitted presence within this District plainly satisfies ˍ1400(b).

## II.     The Eastern District of Texas is the Right Forum for this Dispute Under 28 U.S.C. § 1404(a).

Traditional respect for a Plaintiff's right to choose its forum "places a significant burden on the movant to show good cause for the transfer" of venue to another forum. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008). "To prevail on a motion to transfer under § 1404(a), the movant must show that transfer is 'clearly more convenient' than the venue chosen by the plaintiff." *AGIS Software Dev. LLC v. HTC Corp.*, No. 2:17-CV-00514-JRG, 2018 U.S. Dist. LEXIS 167024, at \*8 (E.D. Tex. Sep. 28, 2018). "Absent such a showing, the plaintiff's choice of venue is to be respected." *Id.*; *see also In re Volkswagen*, 545 F.3d 304, 315. "When deciding a motion to transfer under § 1404(a), the court may consider undisputed facts outside of the pleadings such as affidavits or declarations, but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *AGIS Software*, at \*8-9.

This Court applies Fifth Circuit law when deciding motions to transfer venue under 28 U.S.C. § 1404(a). *LG Elecs., Inc. v. Hitachi, Ltd.*, Civil Action No. 9:07-CV-138, 2007 U.S. Dist. LEXIS 94772, at \*5 n.1 (E.D. Tex. Dec. 3, 2007). Under Fifth Circuit law:

> For the usual § 1404(a) or FNC motion, the court considers various private- and public-interest factors. The private-interest factors include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; […] and all other practical problems that make trial of a case easy, expeditious and inexpensive. The public-interest factors

[FILED UNDER SEAL]

> include the administrative difficulties flowing from court congestion; the
> local interest in having localized controversies decided at home; and the
> interest in having the trial of a diversity case in a forum that is at home
> with the law. A plaintiff's choice of forum is given some—significant but
> non-determinative—weight.

*Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766-67 (5th Cir. 2016) (internal citations and

quotation marks omitted).  Honeywell cannot "clearly establish" that EDVA is more convenient.

## III.    The Public Factors Weigh Strongly Against Transfer

### A.    The Eastern District of Texas Has a Greater Interest in this Case

The Eastern District of Texas has a much greater interest in trying this case than the

EDVA does.  Substitute Plaintiff, Innovation, is the current owner of all rights in the patents at

issue by virtue of a recent merger with a Texas entity, Innovation.  Wong Decl. ¶¶ 6-15.   The

merged entity, Innovation, is a Texas company.  Wong Decl. ¶ 8.   The merger, which was

planned prior to the filing of the present action, was undertaken in order to capitalize on the

favorable tax environment in Texas.  Wong Decl. ¶ 9.   More specifically, Virginia taxes

individual income over $17,000 at 5.75%.[8]  Texas does not tax individual income.[9]  In 2017, the

federal government capped deductions for state and local taxes at $10,000, exacerbating the

effect of Virginia's higher taxes by subjecting more of its residents' income to federal taxation.

This District has a significant connection to this case because Texas residents have a

strong interest in patent litigation suits owned by companies located in Texas.[10]  Because

determining the right forum for trial is of paramount interest, the relocation of the patentee to

---

[8] Va. Code Ann. § 58.1-320; *see also* Ex. 12.
[9] *See Strabala v. Zhang*, 318 F.R.D. 81, 101 (N.D. Ill. 2016).
[10] *Cooktek Induction Sys., LLC v. I/O Controls Corp.*, No. 4:15-cv-548-ALM, 2016 U.S. Dist. LEXIS 100825, at *8 (E.D. Tex. Aug. 2, 2016).

[FILED UNDER SEAL]

Texas after an action is initiated does not destroy that interest.[11]

Substitute Plaintiff Innovation has its offices at 5800 Legacy Circle, Suite 311, Plano, Texas 75024.  Wong Decl. ¶ 8.   As a result of the merger, prior Plaintiff, VIS, no longer exists and it will not be maintaining an office in Virginia.  VIS had only one Virginia employee, Dr. Anne Wong, and she has relocated to Plano, Texas.  Wong Decl. ¶¶ 12-14.   Dr. Wong's brother, Dr. Tiejun Wang, the other named inventor, will be physically present *in this District*, <u>not</u> Virginia, when he comes to the United States to testify.  Wong Decl. ¶ 16.  These two are the only inventors named on the patents asserted in this case.  Critically, as a result of the merger, the Innovation documents, electronic and physical, are *in this District*, <u>not</u> Virginia.  Wong Decl. ¶ 15.  In addition to the fact that the current patent owner, Innovation, is a Texas company, all known relevant corporate witnesses and documentary evidence associated with the patent owner are in this District.  This fact weighs strongly against transfer.

This District likewise has an interest in Defendant's infringing behavior.  "This District, like any other, has an interest in a case involving alleged patent infringement by a company with an office, personnel, and business within it."  *E-System Design, Inc. v. Mentor Graphics Corp.*, Civil Action No. 4:17-CV-00682, 2018 U.S. Dist. LEXIS 92797, at *16 (E.D. Tex. June 1, 2018).  Honeywell admits that it has a sales office in this District.  Mot. at 14, Moschorak Decl. ¶ 8.   Only this District will be addressing the work and reputation of a corporate resident and at least one of its human residents. Where a patent suit calls into question the work and reputation of residents, that district has an interest in the suit.  *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).  This factor weighs against transfer.

---

[11] *Id.*, at *8-9; *see also Core Wireless Licensing S.a.r.l. v. LG Elecs. Inc.*, No. 2:14-CV-911-JRG-RSP, 2015 U.S. Dist. LEXIS 115801, at *15-16 (E.D. Tex. Aug. 31, 2015).

**[FILED UNDER SEAL]**

### B.    The Eastern District of Texas Is Better Able to Administer This Case

Adding another patent case to the EDVA's docket would burden a court less prepared than this one to bear the administrative difficulties unique to patent litigation.  There is simply not enough data to form a reliable estimate of the time to trial for a patent case in EDVA.  For cases filed since 2012, EDVA has had only six patent jury trials and one bench trial—fewer than one per District Judge.  *See* Jackson Declaration, Ex. 1.  By contrast, for that same time period, this District has overseen 103 patent jury trials and 19 bench trials.  *See* Jackson Ex. 2.  This Division alone has overseen more trials of patent cases during the same time period than all of EDVA combined, with 12 patent jury trials, 50% clustered 19-23 months from filing and 75% occurring within two years.  *See* Jackson Ex. 3.  This District's demonstrated reliability at administering patent cases in reasonable periods is preferable to the uncertain length to trial in EDVA.

In addition, this District has substantial capacity for patent cases.  From 2017 to 2018, filings in this District decreased almost 28 percent, and it reduced its pending cases by more than 10 percent.  *See* Ex. 4.  By contrast, EDVA saw *an increase* in its pending cases over that same time period.  *Id.*  The Supreme Court's decision in *TC Heartland* has reduced the number of patent filings in this District dramatically.  It is on pace to have the fewest patent filings since 2011, and less than 20% of its peak filings in 2015.  As a result, this Court is in a better position to take the burden of an additional patent case than EDVA.  This factor weighs against transfer.[12]

---

[12] The two remaining public interest factors are: (1) the familiarity of the form with the law that will govern the case; and (2) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  *See In re Volkswagen*, 545 F.3d at 315.  These factors are neutral.

[FILED UNDER SEAL]

## IV.   Private Interest Factors Weigh Strongly Against Transfer from this Court to the Eastern District of Virginia

### A.   Proof Will Be Easier To Access in the Eastern District of Texas

Defendant Honeywell's motion assumes that plaintiff's documents and corporate records are in the EDVA.  But as noted in Section III.A, above, Substitute Plaintiff Innovation is a Texas company and its business records – including its corporate records and those relevant to the patented inventions and the prosecution of its patents – are now in this District.  Wong Decl. ¶ 15.  As a result, throughout most of the discovery process and during trial, relevant records belonging to Innovation are located in this District.

For its part, Honeywell argues only that Virginia is closer to its ███████ headquarters than is Texas and that Honeywell has facilities in Virginia that are more connected to the infringing conduct (*i.e.*, ████████████████████).  Moschorak Decl. ¶ 12.  Honeywell does not, however, specifically identify any Virginia-based Honeywell employee, or non-party Virginia witness, whose testimony will be necessary at trial.  Nor does Honeywell argue that the product design and strategic decisions relating to their security products and services were made in Virginia.  Instead, they advise that product development occurred within Honeywell facilities in ██████.  Moschorak Decl. ¶ 9.   Meanwhile, Innovation will have its evidence in this District and will only incur such expenses if this Court were to transfer the case to EDVA.  If this Court were to transfer, it would simply shift the burden from Honeywell to

18

**[FILED UNDER SEAL]**

Innovation.[13]   Transfer of this action to the EDVA also would result in a trial where neither party

is located.  This factor weighs against transfer.[14]

### B.    Compulsory Process Is Available for Relevant Witnesses in the Eastern District of Texas

The only people subject to compulsory process that Defendant has identified as potential

witnesses are the co-inventors, only one of which is a co-inventor of the patent asserted in this

action: (1) Tiejun Wang; (2) Ning Wang; and (3) Ximing Wang.  *See* Mot. at 22.   Dr. Ning

Wang and Prof. Ximing Wang are not co-inventors of the patent-in-suit, and thus, are not likely

witnesses in the case.  Defendant further identifies Christopher Tobin, Innovation's prosecution

attorney for some early patent applications filed by Innovation.  *See* Mot. at 22.  Mr. Tobin's

connection to the asserted patent is so attenuated that it is not likely that he will appear as a

witness at trial.

Mr. Tobin, who played a limited role in prosecuting different patents years ago, and was

not involved in the prosecution of the patent at issue in this action.  Honeywell's argument that

Mr. Tobin's testimony will be relevant in this case should be given little weight.  Honeywell

suggests that Mr. Tobin's testimony may be relevant to determining priority dates. Mot. at 22.

Priority dates are determined by finding the earliest patent application that supports the claimed

inventions.  Should Honeywell argue that Mr. Tobin's testimony would be relevant to claim

construction, claim construction is primarily based on the intrinsic evidence of record, and

secondarily, on extrinsic evidence establishing the knowledge of those of ordinary skill in the art.

[13] *See Goodman Co., L.P. v. A & H Supply, Inc*., 396 F. Supp. 2d 766, 776 (S.D. Tex. 2005) ("A case should not be transferred if the only practical effect is to shift inconvenience …."); *Cooktek Induction Sys., LLC v. I/O Controls Corp*., No. 4:15-cv-548-ALM, at *10 (E.D. Tex. Aug. 2, 2016).

[14] *See SEVEN Networks, LLC v. GOOGLE LLC*, 2:17-CV-00442-JRG, at pp. 13-14 (E.D.Tex. August 14, 2018 (J. Gilstrap)) (Doc. 280) (finding that location of documents within district weighed strongly against transfer), attached as Jackson Ex. 17.

[FILED UNDER SEAL]

Mr. Tobin's testimony will not bear on either topic.  Defendant proffers no specific explanation as to how Mr. Tobin is relevant to any issue in this case.

Should Mr. Tobin possess information relevant to this action, the availability of a deposition as a substitute for a trial appearance for the witnesses located near EDVA lessens the importance of a trial subpoena.  Under "amended Rule 45(a)(2), a court can issue nationwide deposition subpoenas as long as the deposition is to be taken within 100 miles of the witness's residence or regular place of business. Fed. R. Civ. P. 45(a)(2), 45(c)(1)(A).  This gives parties the option to depose non-party witnesses near their residence or place of business and then present the deposition testimony at trial."[15]

As to the remaining potential witnesses identified by Honeywell, all three reside primarily in China. Dr. Ning Wang and Prof. Ximing Wang are inventors of *different* patents not asserted here, and thus, are not likely witnesses in this case. Dr. Ronald (Tiejun) Wang is a likely witness here, and is Dr. Anne Wong's brother.  He will stay with Dr. Anne Wong when he comes to the United States for deposition or trial.  Wong Decl. ¶ 16.   This means that he will be subject to a compulsory trial subpoena in this District, but <u>not</u> in the EDVA.

Because the most relevant identified witness will be subject to a trial subpoena in this district but not EDVA, this factor weighs against transfer.

### C.    The Cost of Attendance for Willing Witnesses is Lower in the EDTX

It will be more convenient and less expensive to transport willing witnesses to this District than to EDVA.  The only people identified by Honeywell for whom EDVA is more

---

[15] *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693-JRG-RSP, 2017 U.S. Dist. LEXIS 152438, at *15 (E.D. Tex. Sep. 19, 2017).

convenient are Mr. Tobin[16], discussed *supra*.  But, as explained above, he is not a likely witness in this case.  As such, his convenience is not relevant.  This District will be more convenient for witnesses affiliated with Innovation, who unquestionably have relevant evidence and some of whom will testify at trial.

Defendant Honeywell asserts that Anne Wong "operates VIS as its sole employee out of her home within Alexandria." Mot. at 8.  As discussed *supra*, VIS has merged into Innovation, a Texas corporation, and Dr. Anne Wong has relocated her personal residence to Texas.  Defendant is correct that Dr. Ronald (Tiejun) Wang and Prof. Ximing Wang typically stay with her when they come to the United States.   But only Dr. Ronald (Tiejun) Wang is a likely witness in this case.  Because Dr. Wong is now located in the Eastern District of Texas, Dr. Ronald Wang will be staying with her there.  Defendant's analysis presumed that the co-inventors would be staying with Dr. Anne Wong in Virginia, but that presumption is unsupported in light of her move to Plano.  Wong Decl. ¶ 12.  As a result, it would be less expensive and more convenient for Plaintiff, Dr. Anne Wong, and Dr. Ronald Wang, the only two inventors of the patent-in-suit, to appear in the Eastern District of Texas.

If this case were transferred to EDVA, rather than staying at her home in or near this District, Dr. Anne Wong and any other witnesses associated with Plaintiff would have to travel from the Dallas area to Alexandria, VA.  Each flight would take 2 hours 45 minutes and cost a minimum of $222.  *See* Jackson Ex. 5[17]

---

[16] Honeywell includes a declaration from Mr. Halal, but never makes an argument regarding, for example, what testimony he may have that is relevant to the issues in this case.  Mr. Halal was a co-inventor on patents not asserted in this case.  Mr. Halal is not likely to have testimony relevant to this case.

[17] *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009); *Uniloc United States v. Samsung Elecs. Am.*, No. 2:17-CV-00651-JRG, 2018 U.S. Dist. LEXIS 176337, at *6-7 (E.D. Tex. Sep.

**[FILED UNDER SEAL]**

Defendant Honeywell asserts that it has operations and employees in ███████████ and in Virginia.  Honeywell submits the declaration of Mr. Robert Moschorack to support its assertion that the EDVA is the more convenient forum.  But the Moschorack declaration raises as many questions as it answers.

Mr. Moschorack notes that ████████████████████████████ ████████████████████████████ but he does not discuss how they are relevant or what is done at those facilities.  Nor does he suggest that anyone working at those facilities is a likely witness in this case.  Rather he notes that those ████████████ ███████████████████████████████████████ ████████████████████████████ ████████████████ Machorack Decl. ¶ 12.  But that assertion does not change the fact that the relevant offices, responsible for the design, development, marketing and distribution of the accused products, are found in the ████████████████████████. Moschorack Decl. ¶ 9.  Where the hundreds of employees involved in the design and development, as well as the management of marketing, selling, and distributing of those products are located.  *Id.*

Given the fact that neither party is a Virginia corporation or headquartered in Virginia, that Honeywell's relevant documents are likely in ██████, not Virginia, that Honeywell has not identified any witnesses or documents available only in Virginia, and that Innovation's witnesses and documents are in Texas, this factor weighs against transfer.

---

18, 2018).  The Court should not discount convenience factors unrelated to the distance travelled, such as the ability of Tiejun Wang to stay with family in what operates as Tiejun Wang's lawful permanent residence.  *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004); *see also In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

### D. The Resolution of Practical Problems, Including Judicial Economy, Weighs Against Transfer.

Honeywell argues that the interests of judicial economy will be served by transferring this case to the EDVA because "both the Norfolk and Alexandria Divisions of the Eastern District of Virginia have committed significant efforts adjudicating VIS's *related* patents." Mot. 17-18 (emphasis added); *see also* p. 26.

In making this argument, Honeywell refers to actions taken by two different judges, in different divisions, and acts as though <u>both</u> the *Amazon* case <u>and</u> the *Samsung* case impute the collective experience to one judge. That is not the case. There were two judges in two divisions. Even those judges chose to not consolidate the separate actions before the same judge in the District. That decision undermines the assertion that transfer here is appropriate. Honeywell's approach differs from the approach taken by Defendants Amazon.com and Vector Security in this one respect, referring to both prior EDVA actions instead of the just the one handled by Judge O'Grady. But Honeywell's requested transfer will not result in an assignment to one judge with knowledge of both cases – indeed, Honeywell cannot establish that a transferred case would be assigned to either judge.

Like Amazon and Vector, Honeywell glosses over the differences between the factual disputes in this and the two earlier cases *Amazon* cases, *Virginia Innovation Sciences, Inc. v. Amazon.com, Inc.*, No. 1:16-cv-00861-LO-MSN, E.D. Virginia ("*Amazon I*") and *Virginia Innovation Sciences, Inc. v. Amazon.com, Inc.*, No. 2:17-cv-00422-MSD-LRL, E.D. Virginia ("*Amazon II*").[18] Although the patent asserted against Honeywell here is "related" to the patents asserted in *Amazon I*, the similarities end there. First and foremost, *Honeywell was not a party to*

---

[18] *Amazon I* was assigned to Judge O'Grady while *Amazon II* was assigned to Judge Davis. *Amazon II* involved four patents not asserted in *Amazon I*. *Amazon II* was dismissed without prejudice before Amazon served an answer to that complaint. *See* Jackson Ex. 24.

[FILED UNDER SEAL]

*the earlier action and not one of its products or services was accused of infringement in that*

*case*.  Moreover, the only patent asserted against Honeywell in this case, the '983 patent, was not

at issue in either of the earlier EDVA proceedings, and the claims of the '983 patent are directed

to different subject matter – *i.e.*, smart home technology – as it relates to Honeywell, home

security systems.  Wong Decl. ¶¶ 21-26.  The allegations here do not overlap the allegations

addressed by either Judge O'Grady or Judge Davis.

With regard to the issue of patent relatedness, the patent portfolio related to the '983

patent is large, and it includes multiple continuations-in-part, resulting in multiple separate lines

of patents, each addressing different technologies.  Wong Decl. ¶¶ 17-18.   Indeed, the '983

patent asserted against Honeywell here is separated from the '492 patent asserted in the EDVA

*Amazon I* action by eleven generations of applications, with three continuation-in-part

applications separating them.  Beyond having its own, distinct patent claims, the '983 patent

specification includes material not found in the patents asserted the *Amazon I* action.  Ignoring

these differences, Honeywell asserts that the '983 patent is "closely related" to patents litigated

in the EDVA.  Mot. at 23.  But Honeywell never makes a comparison between the '983 patent

and any patents litigated in the EDVA.  Nevertheless, among the differences, Figure 21 through

31 of the '983 patent, and supporting parts of the specification, were not part of the patents

asserted in the earlier *Amazon* actions.  Wong Dec. ¶ 18.

Reflecting the general nature of the technology at issue in the *Amazon I* case, Judge

O'Grady characterized the technology before him as "'converting signals' received from a

network" to facilitate display on an "'alternative display terminal (e.g. a television).'"  Jackson

Ex. 20, p. 1 (*Amazon I* order dismissing '492 patent family claims).  As further explained by

Judge O'Grady, the products accused of infringement there were the "Amazon Fire TV and Fire

**[FILED UNDER SEAL]**

Stick devices, smartphone, mobile phones and tablet products." *Id.*  By contrast, the patent

claims asserted in this action are directed to the smart home technology.  Every infringement

assertion in this case is based on smart home products, including the home security products sold

by Honeywell that can optionally work with the Alexa technology offered by Amazon.

Moreover, Judge O'Grady dismissed the infringement claims related to eight patents

under § 101 at the motion to dismiss stage, and subsequently found a ninth patent invalid on that

same ground.  But even that fact must be understood in context.  Whether a patent is invalid

under § 101 depends entirely on what is claimed, and often *how* the invention is claimed.  In

finding the claims of these nine patents invalid under § 101, Judge O'Grady did not find that the

specifications of the patents asserted in that action could not support valid claims – he was asked

only whether the asserted claims of those patents withstood § 101 scrutiny.  As a result, Judge

O'Grady did not develop an expertise with respect to either the technology *described in those

patents* or the products accused of infringing those patent claims.

Even if the specification of the '983 patent were the same as those of the patents asserted

in the earlier action, and it is not, it is the claims of the '983 patent that must be evaluated under

§ 101.  Judge Grady's prior experience with the earlier patents would not provide him with

insight as to the claims of the '983 patent.  A representative claim comparison is included in

paragraph 2 of the Jackson Declaration.  As this claim comparison shows, claim 117 of the '983

patent is directed to a wireless HUB supporting both a network communication channel and a

wireless transmission channel, not the signal converter claims addressed by Judge O'Grady.

With regard to the two remaining patents in the *Amazon I* action, Judge O'Grady granted

summary judgment of no infringement of one patent and VIS stipulated to non-infringement of

the last remaining patent.  But both decisions were based on the claim constructions adopted by

[FILED UNDER SEAL]

the EDVA court.  Thus, not one of the patents asserted in *Amazon I* went to trial.  Rather, as to

even the patents at issue in that proceeding, Judge O'Grady's involvement extended to the § 101

issue for nine of the eleven patents, to construing the disputed claim terms of the remaining two

patents, and entering summary judgment against those two patents.

In an effort to find overlap, Honeywell asks this Court to consider the claim constructions

adopted by Judge Davis in the *Samsung* action and Judge O'Grady in the *Amazon I* action.  Mot.

at 26.  But this case cannot be transferred to both judges.  Moreover, the term "converted video

signal" does not appear in the '983 patent claims.  In any event, Honeywell does not develop

what claim constructions were adopted or how they relate to this case.  Close inspection reveals

the reason:  In both cases, the courts reviewed the parties' *Markman* submissions and found no

construction necessary for the disputed term "unique identifier" in the case of Judge O'Grady

and the term "converted video signal" in the case of Judge Davis.  *See, e.g,*, Jackson  Exs. 22, 23.

In both cases, the courts found that the disputed term would carry its "plain and ordinary

meaning."  *Id*.  Once again, Honeywell's effort to demonstrate overlap fails.

Undeterred, Honeywell argues that case authority supports transfer.  But the cases

Honeywell cites are readily distinguished.  Both of the cases cited by Honeywell involve

overlapping patents and the transferee court in both had already conducted a trial on the

overlapping patents.  In *Zoltar Satellite Sys. v. LG Electronics Mobile*, 402 F.Supp.2d 731 (E.D.

Tex. 2005), this court noted that three of the four patents in suit before it were the same patents

the California transferee court had conducted a three week trial on.  *Id*. at 735.  Even then, the

*Zoltar* court took pains to point out that the plaintiff patentee there was unable "to identify

specific significant differences between the technology at issue in this case and that at issue in

the California litigation."  *Id*. at 736.  The *MGM* court addressed an almost identical situation,

[FILED UNDER SEAL]

where one of the three patents before it had been tried to the bench in the transferee court. *MGM Well Services, Inc. v. Production Control Services, Inc.*, 2010 WL 11553307 *6 (E.D. Tex. Nov. 22, 2010) (J. Love).

Every motion to transfer requires a fact intensive analysis. *J2 Global Communication, Inc. v. Protus IP Solutions, Inc.,* 2008 WL 5378010 *3 (E.D. Tex. Dec. 23, 2008) (J. Love) (denying motion to transfer action involving same patent under finding defendants failed to show that transfer was necessary to preserve judicial economy). Nor would an existing claim construction from another court on even the same patent require transfer. *ConnecTel, LLC v. Cicsco Sys., Inc*., 2005 WL 366966 *4 (E.D. Tex. Feb. 16, 2005) (J. Davis) (denying transfer and noting that gains in judicial economy "could be realized by simply referring to Jude Gardner's claim construction, if necessary."). The Federal Circuit has given some guidance on this very point. In *In re Echostar Corp*., 388 Fed. Appx. 994, 995 (Fed. Cir. 2010) (unpublished), the Federal Circuit denied a petition for mandamus that sought to reverse this Court's refusal to transfer venue. The Federal Circuit denied the petition even though same patents were involved in each case on the ground that different products were accused of infringement in the two cases. *See id*. at *1-2. Here, not even the same patents are at issue in the two fora.

Finally, retaining jurisdiction here will enhance judicial economy. Three related cases are pending in this District. The presence of Innovation's co-pending patent infringement cases against Amazon (4:18-cv-00474-ALM), HTC Corporation (4:18-cv-00476-ALM), and Vector Security, Inc. (4:18-cv-00477-ALM) weigh against transfer in the interest of judicial economy. The presence of co-pending cases involving the same patents-in-suit, pertaining to the same underlying technology, and accusing similar devices and devices that may optionally work in conjunction with Amazon's technology and products, weighs in favor of refusing transfer. *See,*

[FILED UNDER SEAL]

*e.g.*, *In re Aliphcom*, 449 F. App'x 33, 35 (Fed. Cir. 2011) (denying mandamus relief from transfer order to district where patent in suit was presently being litigated); *ColorQuick, L.L.C. v. Vistaprint Ltd.*, No. 6:09-cv-323, 2010 U.S. Dist. LEXIS 136226, at *25-26 (E.D. Tex. July 22, 2010) (overruling objections to report denying motion to transfer due to co-pending cases involving same patent); s*ee also Collabo Innovations, Inc. v. OmniVision Techs., Inc.*, Civil Action No. 16-197-SLR-SRF, 2017 U.S. Dist. LEXIS 10199, at *16-17 (D. Del. Jan. 25, 2017) (collecting cases and holding that keeping co-pending cases involving the same patent-in-suit together serves the interest of judicial economy).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court DENY Defendant's motion to dismiss and transfer venue.

Date:   December 4, 2018

Respectfully submitted:

*/s/ Donald L. Jackson*
Donald L. Jackson, VA Bar No. 42,882
(Admitted E.D. Tex.)
**DAVIDSON BERQUIST JACKSON & GOWDEY LLP**
8300 Greensboro Dr., Suite 500
McLean, Virginia  22102
Telephone: (571) 765-7700
Facsimile:  (571) 765-7200

*Attorneys for Plaintiff*

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2018, a true and correct copy of the foregoing document was served on the following counsel of record via one or more of the following: the individual email addresses set forth below, the court's regular ECF filing procedures, and counsel's provided list service address:

| | |
|---|---|
| J. Thad Heartfield | Brian Berliner |
| thad@heartfieldlawfirm.com | bberliner@omm.com |
| M. Dru Montgomery | O'MELVENY & MYERS LLP |
| dru@heartfieldlawfirm.com | 400 S. Hope Street |
| Stephen L. Townsend | Los Angeles, CA 90071 |
| stephen@heartfieldlawfirm.com | |
| The Heartfield Law Firm | Melody Drummond Hansen |
| 2195 Dowlen Road | mdrummondhansen@omm.com |
| Beaumont, Texas 77706 | O'MELVENY & MYERS LLP |
| | 2765 Sand Hill Road |
| Brett Williamson | Menlo Park, CA 94025 |
| bwilliamson@omm.com | |
| Cameron Westin | |
| cwestin@omm.com | |
| O'MELVENY & MYERS LLP | |
| 610 Newport Center Drive, 17th Floor | |
| Newport Beach, CA 92660 | |

*/s/ Donald L. Jackson*
Donald L. Jackson

## **CERTIFICATE OF AUTHORIZATION TO SEAL**

The undersigned certifies that a motion to file the foregoing document under seal was filed on December 4, 2018.

*/s/ Donald L. Jackson*
Donald L. Jackson